775 So.2d 1187 (2000)
STATE of Louisiana
v.
Royd SCHLEVE a/k/a Roy Smiley a/k/a Roy Cangelosi
No. 99 KA 3019.
Court of Appeal of Louisiana, First Circuit.
December 20, 2000.
*1190 Walter P. Reed, Office of District Attorney, Covington, by Dorothy A. Pendergast, Special Appeals Counsel, Metairie, Counsel for State of Louisiana.
Frederick H. Kroenke, Jr., Baton Rouge, Counsel for Defendant/Appellant, Royd Schleve.
Royd Schleve, Appellant pro se.
Before: GONZALES, PETTIGREW and ROTHSCHILD,[1] JJ.
GONZALES, J.
Defendant, Royd Schleve, was charged by bill of information with two counts of simple burglary, violations of La. R.S. 14:62. Following a jury trial, he was found *1191 guilty of attempted simple burglary on count one and unauthorized entry of a place of business on count two. Thereafter, he was adjudicated a fourth-felony offender and sentenced as such to forty years at hard labor, without benefit of parole, probation, or suspension of sentence, for the attempted simple burglary. The trial court sentenced him to six years at hard labor for the unauthorized entry, consecutive to the sentence on count one. Defendant has now appealed, raising three counseled and three pro se assignments of error.[2]
Counseled Assignments of Error
1. The trial court erred in failing to grant the motion to quash the bill of information for the state's failure to designate the felony which the state alleged the defendant intended to commit.
2. The trial court erred in allowing the introduction of other crimes evidence when the state failed and refused to notify the defendant as to which exception to the exclusionary rule it would rely on for the introduction of the other crimes.
3. The evidence was insufficient to prove the essential elements of the crime of burglary, or unauthorized entry to a place of business.
Pro Se Assignments of Error
1. The trial court erred in denying defendant's motion to suppress other crimes evidence presented by the state.
2. The trial court erred in admitting several state exhibits over defense objection.
3. The trial court erred in adjudicating defendant a fourth-felony offender.

Facts
On November 7, 1996, defendant was married and living with his wife in Metairie, Louisiana. Although he had been terminated from his job as an electrician the day before. he did not say anything about it to his wife and acted as though he was going to work that morning. Instead, late that morning, a first-grade teacher, Beth Lane, observed defendant standing in the hallway of the first-grade building at Mandeville Elementary School watching the children walk past. She said her attention was drawn to him because of the way he was looking at the children, which was not the way a parent normally looks at his child. Defendant also was not wearing the required visitor's badge. After escorting her class to the cafeteria, Ms. Lane again encountered defendant, this time in the third-grade hallway in front of the student restrooms. When Ms. Lane asked if she could help him, defendant replied that he was there to inquire about registering a child and was looking for the office. To ensure that defendant got to the right place, she escorted him to the office rather than merely giving him directions. She stated that the school was not open to the public to walk around freely.
Once in the office, defendant told the secretary he wanted to register his daughter in the second grade and stated his name was Richard Cangelosi. He also made vague and inconsistent statements regarding where he lived, at one point saying he lived with a woman and later saying he lived with his mother, whose address he could not remember. Defendant then left the school. These facts were the basis of the second count of simple burglary against defendant.
The following facts gave rise to the first count of simple burglary. Upon leaving Mandeville Elementary, defendant proceeded to Our Lady of the Lake Elementary School, a nearby parochial school. He *1192 went to the office and asked about the procedure for registering his daughter in the second grade. The secretary informed him that no space was available in that grade, but offered to take his name and phone number for the principal. Defendant gave his name as Roy Cangelosi. As defendant left the office, the principal, who had overheard the conversation from his office, watched him walk away until he thought defendant had left the campus. However, two teachers saw defendant shortly thereafter exiting the girls' restroom in a classroom building. At least two girls were in the restroom at the same time as defendant. One of the girls, a first-grader, testified that defendant was looking in the stalls. As defendant walked toward her, she left the restroom, with defendant following behind her. Upon being approached by a teacher who was standing outside the restroom, defendant claimed to be an electrician either working on or changing lights at the school. He appeared flustered and stated he had been looking for the boys' restroom before making the long trip over the causeway. The teacher told him he would need to use the adults' restroom in the office and directed him in that direction. Instead of going to the office, defendant exited a nearby door and drove away.
Defendant testified at trial that on the date in question, he went to Mandeville to cash his last payroll check, which was drawn on Parish National Bank, because he was told the branch in Mandeville was the closest one to him. He then decided to visit Mandeville Elementary to get registration information for his daughter and got lost on his way to the office. He offered no explanation for why he was seeking registration information in Mandeville when he lived across the lake in Metairie. According to defendant, he gave a false name because he had absconded from parole supervision in East Baton Rouge Parish. Defendant emphatically denied entering the schools for the purpose of committing a sexual offense. He claimed he was becoming "like out of it" as a result of the effects of prescription medications he was taking for neck and back pain.

Insufficiency of the Evidence
In counseled assignment of error number three, defendant argues the evidence was insufficient to uphold his convictions. At trial, defendant presented the testimony of a psychiatrist in support of the defense of involuntary intoxication resulting from prescribed medications. On appeal, he specifically argues his entries into the schools were not unauthorized. He further asserts the state's evidence did not exclude the reasonable hypothesis of innocence that he entered both schools with the intent of obtaining registration information, rather than to commit a felony therein.
In cases such as the present one where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for determining the sufficiency of the evidence first is that insufficient evidence to support the guilty verdict bars the retrial of a defendant because of the constitutional protection against double jeopardy, thereby rendering all other issues moot. See Hudson v. Louisiana, 450 U.S. 40, 43-45, 101 S.Ct. 970, 972-73, 67 L.Ed.2d 30 (1981); State v. Hearold, 603 So.2d 731, 734 (La.1992). Accordingly, we will first determine whether the evidence was sufficient to support defendant's convictions for unauthorized entry into a place of business and attempted simple burglary.
The standard of review for the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an *1193 objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.
When analyzing circumstantial evidence, La. R.S. 15:438 provides the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Houston, 98-2658 (La.App. 1st Cir.9/24/99), 754 So.2d 256, 259. On appeal, the reviewing court does not determine if another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. When intoxication is raised as a defense, the jury is the ultimate fact finder of whether a defendant has proved his intoxicated condition and whether the state negated that defense. See State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994). In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court does not determine if another possible hypothesis has been suggested by defendant that could explain the events in an exculpatory fashion. Instead, the court must evaluate the evidence in a light most favorable to the state and determine if the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293. See also Mitchell, 99-3342, 772 So.2d 78. An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. State v. Azema, 633 So.2d 723, 727 (La.App. 1st Cir.1993), writ denied, 94-0141 (La.4/29/94), 637 So.2d 460.
In this case, defendant was convicted of the attempted simple burglary of Our Lady of the Lake Elementary School (OLOL) and the unauthorized entry of a place of business, i.e., Mandeville Elementary School. Simple burglary is defined in La. R.S. 14:62 as the "unauthorized entering of any ... structure ..., with the intent to commit a felony or any theft therein...." One is guilty of an attempt to commit simple burglary when he has the specific intent to commit the offense and does or omits an act for the purpose of and tending directly toward accomplishing his object. See La. R.S. 14:27A. The state alleged defendant's intent in entering the schools was to commit a felony sexual offense against a student(s).[3]
Unauthorized entry of a place of business is defined as "the intentional entry by a person without authority into any structure belonging to another and used in whole or in part as a place of business." La. R.S. 14:62.4A (prior to its amendment by 1999 La. Acts No. 803. § 1). In discussing the "unauthorized entering" element of the aggravated burglary and simple burglary statutes, the supreme court has stated that an entry with undeclared felonious intent is not "unauthorized" if it is with the knowing and voluntary consent, express or implied, of the owner or occupant of the premises. State v. Smith, 98-2078 (La.10/29/99), 748 So.2d 1139, 1143. In the case of a building that is open to the public, the consent to enter the building at the times when it is open to the public and within the confines designated is implied, regardless of the intent of the person so entering. State v. Dunn, 263 La. 58, 267 So.2d 193, 195-96 (1972) (per curiam). See also State v. Lozier, 375 So.2d 1333, 1336 *1194 (La.1979). Although entry into a building open to the public during given hours is considered as an authorized entry with the implied consent of the owner, the implied authority extends only to the designated public areas, and not to private or employees-only areas of the building. See State v. Bailey, 573 So.2d 610, 615-16 (La.App. 2d Cir.1991).
In brief, defendant acknowledges that visitors to both schools were required to stop at the office and get permission before entering the school grounds. However, he asserts he did go first to the office at OLOL and should not be guilty of a crime because he did not know how to get to a restroom at the school. With respect to his visit to Mandeville Elementary, he suggests it was necessary to go through part of the school to get to the office and that he went to the office once he was directed there. Moreover, defendant maintains he went to both schools for the legitimate purpose of obtaining registration information for his daughter, because she had been abandoned by her mother and there was a possibility that she might begin living with him. He argues this hypothesis of innocence is as reasonable as the hypothesis that he went to the schools with ill intent.
Upon reviewing the state's evidence, we find it was insufficient to establish that defendant's entry into Mandeville Elementary School was unauthorized. Although the public is not allowed to wander freely about the Mandeville campus, Mandeville is a public school. In State v. Dunn, the defendant was found guilty of simple burglary for entering a high school at night and stealing money from a vending machine. The Louisiana Supreme Court found reversible error in the refusal of the trial court to instruct the jury that entering a building open to the public can not be an "unauthorized entry." 267 So.2d at 195-96. In the instant case, school was in session when defendant was found in the first and third grade areas of the school, and there was no evidence of any forced entry. Signs instructing visitors to check in at the office were posted at all entrances, but the school secretary admitted on cross-examination that the signs shown in the photographs were not the same signs as those posted on the date of the offense, and the prosecutor did not question her about this any further. According to the teacher's testimony, Mandeville Elementary School consists of several buildings. Apparently, a visitor can enter one of the buildings without being stopped at the office. The teacher referred to a diagram in her testimony, but the state did not introduce the diagram. When the teacher saw defendant in the first-grade area, she was returning her class to her classroom after having viewed a play performed in the gym by the third-grade students. Parents and other visitors were at the school for the play, and there was commotion at the school because of the performance. When the teacher saw defendant in the third-grade wing, she confronted him, and he voluntarily accompanied her to the school office. After talking to the secretary, defendant left the school.
After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could not have concluded the state proved beyond a reasonable doubt that defendant was guilty of unauthorized entry of Mandeville Elementary School.
We conclude, however, the state's evidence was sufficient to establish defendant's entry into the classroom building at OLOL was unauthorized. OLOL is a private, parochial school not open to the public. Moreover, OLOL's principal testified that the school was not open to the public, and defendant was not authorized to be in the classroom building where he was discovered coming out of the girls' restroom. The evidence reveals that, although defendant initially went to the school office, he did not request or receive permission to enter the school or obtain a visitor's badge, nor did he ask for directions to a restroom. *1195 Nevertheless, once he left the office, he went into a classroom building and entered the girls' restroom. Moreover, a teacher who observed defendant exiting the restroom testified she had been standing in the hall outside the restroom for minutes and did not see defendant enter therein. Thus, defendant stayed inside the girls' restroom for at least several minutes, although the absence of urinals and presence of young girls inside should have made it immediately obvious that he was in the wrong restroom. Given the circumstances, the evidence established that defendant's entry into this classroom building was unauthorized.
To prove defendant was guilty of attempted simple burglary, the state also was required to establish that the entry was made with the intent to commit a felony or theft therein. The state alleged defendant entered the school with the intent to commit a felony sexual offense upon a student(s). At trial, defendant emphatically denied going to either school for the purpose of committing a sexual offense. Rather, he claims he went there to obtain information on registration requirements for his eight-year-old daughter, who had been abandoned by her mother. He further claimed he began taking a combination of prescription drugs that day (for a seizure disorder and back injury) that caused him to remember very little about the incident at OLOL. In this connection, he presented the testimony of an expert psychiatrist who testified that the particular combination of drugs defendant was taking could result in involuntary intoxication, causing a person to become disoriented and rendering that person incapable of forming specific criminal intent. Defendant additionally testified that he looked for a restroom at OLOL because he has a problem with frequent urination, caused by hepatitis C. He denied telling the teacher who questioned him that he was working at the school changing light bulbs. Defendant further testified that, when he saw a little girl in the restroom, he thought she was the one in the wrong restroom.
In order to meet its burden of proof of establishing defendant's specific intent to commit a felony sexual offense upon one of the students, the state introduced evidence of several prior incidents involving defendant to show his lustful disposition toward young girls. It was for this purpose that the state presented the testimony of B.C., defendant's sixteen-year-old niece by marriage. B.C. described an incident that occurred when she was twelve years old and visited Gulf Shores, Alabama, with her parents and friend, all of whom stayed in one room. When defendant and his future wife (B.C.'s aunt) arrived in Gulf Shores, they stayed in the room with the others because they were unable to get a room. While everyone was asleep that night, defendant moved to where B.C. was sleeping on the floor in a sleeping bag. He claimed to be cold and said he needed a blanket. However, when B.C. offered to give him her blanket, he refused, saying he would share with her. He then unzipped one side of the sleeping bag and began rubbing her legs "all the way up to [her] stomach." He also put his head into the sleeping bag. When he saw that B.C. was becoming aggravated, he returned to the other side of the room. The next morning, B.C. told her mother what had occurred, and the family immediately left Gulf Shores and returned home. The incident was not reported to the police. B.C. also testified as to another incident occurring approximately a year later when her aunt and defendant were visiting her parents. At that time, B.C. was in her bedroom and looked up to see defendant standing right in front of her window, looking into the room. She further stated that her room is not located in an area one normally passes in going into or out of the house.
The state also introduced evidence that defendant was arrested for sexual battery as a result of a 1991 incident involving a five-year-old girl, whom defendant and his girlfriend were babysitting. Defendant told the police that the child came on to *1196 him, kissing him and rubbing herself against him. However, during a police statement, defendant admitted he had a sexual problem and could not control himself. He further stated that his attendance at Sex Addicts Anonymous had not helped him. He ultimately pled guilty to sexual battery as a result of the incident.
From the guilty verdict returned, it is obvious the jury rejected defendant's testimony and accepted the state's evidence indicating defendant entered OLOL with the intent of committing a felony sexual offense. The jury's conclusions were based on its credibility determinations. This Court will not assess the credibility of witnesses or reweigh the evidence on appeal. See State v. Pooler, 96-1794 (La.App. 1st Cir.5/9/97), 696 So.2d 22, 58, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288.
Moreover, in a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court ... "does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion." Juluke, 98-0341, 725 So.2d at 1293 (quoting State v. Captville, 448 So.2d 676, 680 (La.1984)) (emphasis in original). Rather, the reviewing court must evaluate the evidence in the light most favorable to the prosecution to determine whether the alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Juluke, 98-0341, 725 So.2d at 1293.
After a careful review of the record, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded the state proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that defendant was guilty of attempted simple burglary. However, the evidence of defendant's guilt on count two was not constitutionally sufficient. Accordingly, we reverse defendant's conviction for unauthorized entry into a place of business, vacate the sentence imposed on count two, and enter an order of acquittal on that count.

Motion To Quash
In counseled assignment of error number one, defendant argues the trial court erred in refusing to quash the bill of information based on the state's failure to designate the felony it alleged defendant intended to commit.
As previously noted, simple burglary is an unauthorized entry into any structure with the intent to commit a felony or a theft therein. See La. R.S. 14:62. In the instant case, the state used the short form indictment delineated by La. C.Cr.P. art. 465A(14), which did not specify defendant's intended felony. Defendant filed a pro se motion to quash the bill of information due to this omission. The defense also filed a bill of particulars requesting that the state designate the specific felony it maintained defendant intended to commit at the time of his alleged unauthorized entry. In answer, the state indicated the intended felony was the commission or attempted commission of one or more of the following offenses: aggravated rape, forcible rape, simple rape, sexual battery, aggravated sexual battery, oral sexual battery, aggravated oral sexual battery, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, aggravated crime against nature, contributing to the delinquency of juveniles, and/or obscenity.
At a subsequent motion hearing, defendant argued the state's answer was inadequate because he planned to assert an involuntary intoxication defense, which is applicable only to specific intent crimes. See La. R.S. 14:15(2). The list of crimes provided in the state's response included both general intent and specific intent crimes. However, the state responded that it would be required to prove specific intent regardless of the underlying felony *1197 because one of the elements of simple burglary was the intent to commit a felony or theft. Thus, it was required to show that the unauthorized entry was made with that specific intent. The trial court ruled that the state's answer to defendant's bill of particulars was adequate.
Article I, § 13 of the Louisiana Constitution provides that in a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. This requirement is intended to protect the accused's right to prepare a defense and exercise fully his right of confrontation. The bill of information must therefore inform the defendant of the nature and cause of the accusation against him in sufficient detail to allow him to prepare for trial, as well as to allow the court to determine the admissibility of the evidence. See State v. Johnson, 93-0394 (La.6/3/94), 637 So.2d 1033, 1034-35. Properly used, a bill of particulars should inform the accused with particularity of all the essential facts relied upon to prove the crime charged and remove any doubt as to the crime charged. Hence, the accused will know the scope of his criminal activity so as to properly defend himself and eliminate any possibility of ever being charged again with the same criminal conduct. State v. Authement, 532 So.2d 869, 873 (La.App. 1st Cir.1988).
In the instant case, the state's answer clearly informed defendant that the underlying felony alleged by the state was one of several sexual offenses. The bill of information, together with the state's answers to the bill of particulars, was sufficient to inform defendant of the nature and cause of the accusation against him in enough detail to allow him to prepare for trial, to allow the trial court to determine the admissibility of evidence, and to eliminate any possibility of defendant ever being charged again for the same criminal conduct.
In arguing the bill of information should have been quashed, defendant relies on State v. Franks, 230 La. 465, 89 So.2d 39 (1956). In Franks, the Louisiana Supreme Court held that the bill of information charging the defendant with aggravated burglary was fatally defective because it failed to apprise him of the felony, which he intended to commit. 230 La. at 471, 89 So.2d at 41. However, Franks is clearly distinguishable in that the state failed in that case to ever designate the underlying felony; whereas, in the present case, the state indicated the underlying felony was one of several sexual offenses, thereby informing defendant of the nature of the charge against him.

This assignment of error lacks merit.

Other Crimes Evidence
In counseled assignment of error number two and pro se assignment of error number one, defendant argues the trial court erred in admitting evidence of other acts and crimes he committed.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. Parker, 625 So.2d 1364, 1371 (La.App. 1st Cir. 1993), writ denied, 93-2832 (La.2/25/94), 632 So.2d 761. However, there are statutory and jurisprudential exceptions to this rule. State v. Jackson, 625 So.2d 146, 148 (La.1993). For example. La. C.E. art. 404B(1) provides, in pertinent part:
Except as provided in Article 412 [addressing the victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it *1198 intends to introduce at trial for such purposes,....
Additionally, several other statutory and jurisprudential rules also play a role in determining the admissibility of such evidence. First, one of the factors listed in Article 404(B) "must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible." Jackson, 625 So.2d at 149. Second, the state must prove by a preponderance of the evidence that the defendant committed the similar act.[4]See Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403; State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, 962. Finally, the state must comply with the notice requirements and limiting instructions set out in State v. Prieur, 277 So.2d 126 (La. 1973). Thereunder, the state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. The state must show the evidence is neither repetitive nor cumulative, and is not being introduced to show the defendant is of bad character. Miller, 98-0301, 718 So.2d at 962.
Moreover, in cases involving child sexual abuse, evidence of other sexual crimes committed on victims unrelated to the defendant may be admissible to show the "lustful disposition" of the defendant. See Miller, 98-0301, 718 So.2d at 966-67. Such evidence has been admitted to show that a defendant "did not act innocently, and will negate any defense that he acted without intent or that the acts were accidental." Jackson, 625 So.2d at 150.
In the present case, defense counsel and defendant himself each filed a motion to exclude evidence of prior wrongs or crimes, which were denied by the trial court. Additionally, defendant complains in brief that the state refused to specify which exception to the exclusionary rule it would rely on to introduce the other crimes evidence at issue. However, a review of the record reveals that the state gave written notice to defendant that it intended to introduce this evidence under La. C.E. art. 404(B) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Further, a pre-trial Prieur hearing was held during which the state again indicated it intended to use the other crimes evidence for these purposes.
We have reviewed the evidence introduced at the Prieur hearings and find no error in the trial court's ruling that evidence of the two incidents involving B.C. and the sexual battery of the five-year-old girl was admissible at trial. Given the testimony of B.C. and the fact that defendant pled guilty to sexual battery as a result of the latter incident, a jury reasonably *1199 could have concluded that defendant committed the acts described, even if the applicable burden of proof was by clear and convincing evidence. See Hills, 99-1750, 761 So.2d at 522. Further, the evidence was relevant to an issue other than the defendant's character. The prior incidents were evidence of the defendant's "lustful disposition" toward young girls. Thus, the evidence was relevant in determining whether defendant possessed specific intent to commit a sexual offense when he entered OLOL. See Miller, 718 So.2d at 966. Lastly, we conclude the trial court did not abuse its discretion in ruling that the probative value of the Prieur evidence outweighed its prejudicial effect in this case. The state's case relied entirely on circumstantial evidence to establish the intent with which defendant entered the two schools. Therefore, the evidence showing his lustful disposition toward young girls was highly probative with regard to this critical issue, although it was also very prejudicial. Ultimately, questions regarding the admissibility of evidence are within the discretion of the trial court and should not be disturbed absent a clear abuse of that discretion. State v. Mosby, 595 So.2d 1135, 1139 (La.1992). We find no abuse of discretion in this case.
These assignments of error are without merit.

Admissibility of Photographs
In his second pro se assignment of error, defendant contends the trial court erred in admitting into evidence, over defense objection, several photographs presented by the state. The photographs at issue depict: (1) distance shots of the entrance into the classroom building at OLOL (where defendant was discovered) showing signs on the doors (5-8 & S-9); (2) close-up views of signs on the OLOL doors advising that the doors are to be kept locked, for the safety of the students (S-10 & S-11); and, (3) signs posted at Mandeville Elementary advising that, as a safety precaution, all visitors are required to sign in at the office and wear a visitor's badge (S-19 & S-20).
Defense counsel objected at trial to the introduction of these exhibits because the photographs were taken in 1998 and, therefore, did not accurately reflect the condition of the schools in 1996, when the incidents in question occurred. The trial court overruled the objections.
The thrust of defense counsel's objections, as well as defendant's arguments on appeal, is that the photographs were inadmissible because they were not relevant. Louisiana Code of Evidence article 402 states, in pertinent part, that evidence that is not relevant is not admissible. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. In questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. See State v. Pooler, 96-1794, 696 So.2d 22, 46.
Defendant's contention that the signs did not actually reflect the condition of the schools in 1996 is based on the testimony of Mandeville's secretary, Genie Livaudais, that the signs pictured in S-19 and S-20 were not the exact signs posted in 1996 because the doors had been painted since then. However, she did not indicate that the language of the signs in the photographs, which instructs all visitors to report to the office, was any different from that of the prior signs. In fact, there was testimony from a Mandeville teacher, Beth Lane, indicating that the signs posted in 1996 also instructed visitors to report to the office. Moreover, there was no suggestion that the signs posted at OLOL, as depicted in S-8 through S-11, were not posted there in 1996.
In any event, even if the disputed exhibits were not relevant because the *1200 photographs were taken several years after the incidents in question, we conclude the admission of the exhibits would constitute harmless error. The substance of what the photographs depicted is cumulative of testimony given at trial. See La. C.Cr .P. art. 921; State v. Price, 93-0625 (La.App. 1st Cir.3/11/94), 636 So.2d 933, 938, writs denied, 94-0742 (La.6/17/94), 638 So.2d 1091, and 94-1566 (La.10/14/94), 643 So.2d 159. Specifically, during the direct testimony of OLOL's principal, he read to the jury, without objection, the content of the signs depicted in S-8 through S-11. Moreover, the signs shown in S-19 and S-20 were merely cumulative of the unobjected to testimony of Ms. Lane and Ms. Livaudais indicating that posted signs instructed visitors to Mandeville Elementary to report to the office.

This assignment of error lacks merit.[5]

Habitual Offender Adjudication
In his third pro se assignment of error, defendant argues the trial court erred in adjudicating him a fourth-felony offender because the state did not prove he was the same person convicted of one of the predicate offenses.
Before enhanced punishment will be imposed under the habitual offender statute, La. R.S. 15:529.1, the state must prove by competent evidence the existence of a prior felony and that the defendant is the same person who was convicted of that felony. State v. Gordon, 582 So.2d 285, 293 (La.App. 1st Cir.1991). In the present case, the habitual offender bill of information alleged the following two predicate felony convictions in the Nineteenth Judicial District Court: (1) an October 1992 guilty plea to sexual battery (two counts) under case number X-XX-XXXX, and (2) a May 1985 guilty plea to simple burglary under case number 4-85-790. Additionally, the bill alleged that defendant pled guilty in 1986 to attempted second degree forgery under the alias of Dean Crawford in case number 86-CR-7, State of Colorado. Defendant argues herein that the state did not sufficiently establish he was the same person convicted in Colorado.
In order to establish the Colorado conviction, the state introduced copies of the bill of information, the plea agreement, the minute entry of the guilty plea, a transcript of the Boykin hearing, and a copy of the order of commitment in that case. The Boykin transcript reveals that the offense occurred when Dean Crawford attempted to make an unauthorized purchase on a Sears credit card and forged the cardholder's name on the sales slip. Defendant does not contest the validity of the Colorado conviction.
To prove defendant's identity as the person convicted in Colorado, the state introduced certified transcripts of excerpts from defendant's trial testimony. (Habitual offender hearing S-1 & S-2) The transcripts reveal that, when questioned on direct examination as to his past convictions, defendant initially said only that he had a conviction for burglary and one for sexual battery. However, shortly thereafter, he indicated he also had gotten into trouble for unauthorized use of a credit card a long time ago. He thought the resulting conviction was a misdemeanor, but he was not certain of that. During cross-examination, the following exchange between the prosecutor and defendant occurred:
Q. I'll ask you this question then. Are you the one and same Dean Crawford also known as Royd Schleve who was convicted in case number 86-CR-7 Division B of the Courts of Colorado of *1201 criminal intent to commit second degree forgery?
A. That was the unauthorized use of an access card conviction, that's right.
Q. So when you indicated to Mr. Stamps [defense counsel] that you had used two names, that is Roy Smiley and Roy Cangelosi, you have also used the name Dean Crawford?
A. Right, but I forgot. That's not something thatI mean, you didn't ask me.
Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. State v. Pitre, 532 So.2d 424, 426 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La.1989). A defendant's own testimony admitting he was the same person convicted in a prior case is sufficient to meet this burden. See Gordon, 582 So.2d at 293; State v. Soileau, 95-1214 (La.App. 3d Cir.5/15/96), 677 So.2d 518, 519.
In adjudicating defendant a fourth-felony offender in the instant matter, the trial court stated it was satisfied that defendant's testimony established his identity as the same person convicted in the Colorado predicate, which was referred to specifically by case number and court division. We find no error in the trial court's determination. See Gordon, 582 So.2d at 293. Moreover, our review of the state's exhibits, as well as the Colorado provisions under which defendant was convicted,[6] indicates defendant's conviction was for "a crime which, if committed in this state would be a felony." See La. R.S. 15:529.1(A)(1); State v. Hennis, 98-0665 (La.App. 1st Cir.2/19/99), 734 So.2d 21, 24, writ denied, 99-0783 (La.7/2/99), 747 So.2d 16. We conclude the conduct constituting attempted forgery under La. R.S. 14:27 and 14:72[7] is necessarily included in the crime of attempted second degree forgery as defined under Colorado law at the time of defendant's conviction. Further, attempted forgery is a felony under Louisiana law. See La. R.S. 14:27D(3) & 14:72.
This assignment of error lacks merit.

*1202 PATENT SENTENCING ERROR

Under the authority of La.C.Cr.P. art. 920(2), this Court routinely reviews appellate records for patent error. After reviewing the record, we have discovered a patent sentencing error. After adjudicating defendant to be a fourth-felony offender, the trial court sentenced him to forty years at hard labor, without benefit of parole, probation, or suspension of sentence, for the attempted simple burglary conviction. Pursuant to the Habitual Offender Law, if the present or a previous conviction is defined as a crime of violence, a fourth-felony offender shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1(A)(1)(c)(ii). Sexual battery, one of defendant's predicate convictions, is defined as a crime of violence. See La. R.S. 14:2(13)(1). Thus, a sentence of life imprisonment was mandatory in this case. Moreover, the trial court did not articulate a basis for departing downward from the minimum sentence under the Habitual Offender Law, as required by State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. Nevertheless, although the trial court apparently erred in imposing an illegally lenient sentence, this Court will not correct the sentence as the error is in defendant's favor and the state has not appealed the illegal sentence. See State v. Fraser, 484 So.2d 122 (La.1986).
Additionally, we have discovered a second patent sentencing error in that the trial court stated that defendant was not to be eligible for good time credit. Apparently, defendant is ineligible for good time credits on the attempted simple burglary conviction because of his status as a multiple offender. See La. R.S. 15:571.3(C). However, except where otherwise provided by law,[8] the provisions of La. R.S. 15:571.3(C) are directed to the Department of Corrections exclusively, and the sentencing judge has no role in the matter of good time credit. See State ex rel. Simmons v. Stalder, 93-1852 (La.1/26/96), 666 So.2d 661, quoting Jackson v. Phelps, 506 So.2d 515, 517-18 (La.App. 1st Cir.), writ denied, 508 So.2d 829 (La.1987). Accordingly, defendant's sentence on count one is amended to delete the prohibition of good time, and this matter is remanded to the trial court for amendment of the respective minute entries and criminal commitment, if necessary, in accordance therewith.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION ON COUNT 1 AFFIRMED; SENTENCE ON COUNT 1 AMENDED AND AFFIRMED AS AMENDED; CONVICTION ON COUNT 2 REVERSED AND SENTENCE VACATED; ORDER OF ACQUITTAL ENTERED ON COUNT 2; AND REMANDED WITH ORDER.
NOTES
[1] The Honorable Walter J. Rothschild, Judge, Twenty-Fourth Judicial District Court, is serving as judge pro tem. by special appointment of the Louisiana Supreme Court.
[2] In a writ application treated by this Court as a supplement to defendant's pro se brief, defendant also alleges that certain portions of the trial transcript are missing or have been altered and requested production of the original tapes of trial. See State v. Royd Schleve, 00-KW-0418. However, our review of the designated portions reveals no indication that any portions of the record have either been altered or are missing.
[3] In answer to defendant's bill of particulars, the state indicated the intended felony was the commission or attempted commission of one or more of the following offenses: aggravated rape, forcible rape, simple rape, sexual battery, aggravated sexual battery, oral sexual battery, aggravated oral sexual battery, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, aggravated crime against nature, contributing to the delinquency of juveniles, and/or obscenity.
[4] The jurisprudence previously has required the state to prove the defendant committed the other acts or crimes by clear and convincing evidence. However, in State v. Hills, 98-1840 (La.App. 1st Cir.5/14/99), 737 So.2d 885, 891, this Court concluded that the repeal of former La. C.E. art. 1103 and the addition of article 1104 have resulted in a burden of proof less than clear and convincing evidence being required for the admission of other crimes evidence. Accord State v. Langley, 95-2029 (La.App. 4th Cir.9/4/96), 680 So.2d 717, 720-21, writ denied, 96-2357 (La.2/7/97), 688 So.2d 498; State v. Crawford, 95-1352 (La. App. 3d Cir.4/3/96), 672 So.2d 197, 207-08, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379. In reversing the opinion rendered by this Court in Hills, the Louisiana Supreme Court noted that it need not address the burden of proof issue because it had concluded that the other crimes evidence was not admissible on other substantive grounds. State v. Hills, 99-1750 (La.5/16/00), 761 So.2d 516, 520, n. 6. The court further noted that the issue was largely irrelevant anyway, since the evidence presented at the Prieur hearing met the higher standard of proof by clear and convincing evidence. Hills, 99-1750, 761 So.2d at 522, n. 8. We note that the present case presents the same situation.
[5] In his pro se brief, defendant alleges there was an evidentiary hearing on the admissibility of state exhibits 8-11 that was omitted from the record. He bases this assertion on the fact that, while objecting to these exhibits being admitted, defense counsel referred to witness testimony purportedly supporting his objection. However, our review of the record reveals no indication a separate hearing was held on this issue. Instead, it appears defense counsel's reference to witness testimony was a reference to testimony given during the trial.
[6] At the time of defendant's conviction of attempted second degree forgery, Colorado Revised Statute § 18-5-103 provided, in pertinent part, as follows:

(1) A person commits second degree forgery, if, with intent to defraud, he falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
(a) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status; ...
Further, at that time, Colorado Revised Statute § 18-2-101(1) also provided, in pertinent part:
A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense....
[7] La. R.S. 14:27A provides, in pertinent part:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La. R.S. 14:72 provides as follows:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
Whoever commits the crime of forgery shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both.
[8] For instance, La.C.Cr.P. art. 890.1B gives trial courts authority to address eligibility for good time credit when a defendant is convicted of a crime of violence.